UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRYAN WAYNE CRAWLEY, | Case No. 3:12-cv-00465-MMD-WGC |
| Petitioner, | ORDER |
| v. | |
| R. BAKER, et al., | |
| Respondents. | |

Before the Court are the amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (dkt. no. 21) and respondents' answer (dkt. no. 48). The Court finds that relief is not warranted, and the Court denies the amended petition.

In state court, petitioner pleaded guilty to one count of failure to stop on the signal of a police officer. There were no plea negotiations. *See* Exh. 9 (dkt. no. 36). The prosecution sought adjudication of petitioner as a habitual criminal pursuant to NRS § 207.010(1)(b), also known as the large habitual criminal statute. Exh. 6 (dkt. no. 36). The state district court agreed and sentenced petitioner to life imprisonment with eligibility for parole beginning after ten years. Exh. 15 (dkt. no. 36). Petitioner appealed, and the Nevada Supreme Court affirmed. Exh. 18 (dkt. no. 36).

At the time that petitioner entered his plea, he was facing other charges in what came to be one consolidated criminal action in state district court, including a charge of first-degree murder for which the prosecution was seeking the death penalty. Petitioner was found guilty, but the jury decided not to impose the death penalty.

Petitioner then filed a post-conviction habeas corpus petition in state district court. Exh. 20 (dkt. no. 37). The state district court appointed counsel, who filed a supplemental petition. Exh. 32 (dkt. no. 37). The state district court denied the petition. Exh. 43 (dkt. no. 37). Petitioner appealed, and the Nevada Supreme Court affirmed. Exh. 47 (dkt. no. 37).

Petitioner then commenced this action. The original habeas corpus petition (dkt. no. 9) contained no grounds for relief, and the Court directed petitioner to file an amended petition. Petitioner filed an amended petition. (Dkt. no. 21.) Respondents moved to dismiss the amended petition because it was untimely. (Dkt. no. 35.) The Court denied the motion because it determined that equitable tolling was warranted. The answer followed. (Dkt. no. 48.)

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Richter*, 562 U.S. at 100. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

*Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

*Richter*, 562 U.S. at 102.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 103.

The grounds in the amended petition are all claims of ineffective assistance of counsel. The Sixth Amendment does not guarantee effective counsel *per se*, but rather a fair proceeding with a reliable outcome. *See Strickland v. Washington*, 466 U.S. 668, 688, 691-92 (1984); s*ee also Jennings v. Woodford*, 290 F.3d 1006, 1012 (9th Cir. 2002).

A petitioner claiming ineffective assistance of counsel must demonstrate that (1) the attorney's representation "fell below an objective standard of reasonableness" and (2) the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong

///

3

presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." *Id.* at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted). In *Richter*, the Supreme Court instructed:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, 562 U.S. at 105 (citations omitted).

Ground 1 is a claim that counsel provided ineffective assistance when counsel advised him to plead guilty without any plea negotiations. As noted above, Petitioner

///

///

4

was adjudicated as a large habitual criminal and was sentenced to life imprisonment with parole eligibility starting after ten (10) years. The Nevada Supreme Court held:

> First, Crawley argues that his counsel was ineffective for allowing him to plead guilty to the charge in the indictment without the benefit of negotiations, which resulted in his receiving a life sentence under the large habitual criminal statute. Crawley failed to demonstrate that his counsel's performance was deficient or that he was prejudiced. Crawley did not allege any error by counsel that affected his decision to enter his guilty plea, and thus he failed to show that but for that error, he would not have pleaded guilty. The fact that he was unhappy with the sentence that he received — life in prison with the possibility of parole after ten years — did not render his counsel ineffective for advising him to enter a guilty plea. *See Rouse v. State,* 91 Nev. 677, 679, 541 P.2d 643, 644 (1975) (holding that defendant's hope of leniency or mere subjective belief as to potential sentence is insufficient to invalidate his decision to enter guilty plea). As to Crawley's assertion that counsel was aware that he had a capital murder trial pending at the time of the plea, he failed to explain how counsel was ineffective in this regard. Therefore, we conclude that the district court did not err in denying this claim.

Exh. 47, at 2 (dkt. no. 37).

Petitioner complains that his conviction in this case was used against him in the penalty phase of the capital murder case. However, he suffered no prejudice from the decision to plead guilty, for two reasons. First, the jury in the capital murder case did not sentence him to death. Second, petitioner's argument is based upon an unrealistic assumption that the state district court would have stayed this criminal case until after his trial in the capital murder case. At the calendar call for the trial in this case, which turned into a guilty plea hearing, defense counsel estimated that the trial in the capital murder case would not occur for another year to a year-and-a-half.[1] Exh. 9, at 4-5 (dkt. no. 36). Petitioner has not alleged how the outcome in this failure-to-stop case would have been different had counsel not advised him to plead guilty.

Although no trial occurred, respondents have provided the grand-jury transcript as an exhibit. A detective, looking for a man named Jeremy Nuckles, saw Nuckles enter a van on the passenger's side. Exh. 3 at 11 (dkt. no. 36). The detective then saw

///

---

[1] Counsel's estimate was accurate. The plea hearing in this case occurred on May 2, 2007. The trial in the capital murder case started on or around November 4, 2008.

5

petitioner enter the van on the driver's side. *Id.* at 12 (dkt. no. 36). The detective saw the van drive away. From that point onward, the van was under the observation of the detective himself or other police officers in cars or in a helicopter. The police officers tried to stop the van in North Las Vegas, but petitioner evaded the blocking car and sped away. *Id.* at 17 (dkt. no. 36). Officers then chased petitioner more than 100 miles north out of the Las Vegas area until petitioner lost control of the van and crashed north of Alamo, Nevada, on U.S. Highway 93. *Id.* at 22 (dkt. no. 36). Petitioner ran from the crashed van, and a police officer caught him. *Id.* at 23 (dkt. no. 36). Petitioner does not allege a reasonable probability that the outcome of a trial would have been something other than a verdict of guilty. Petitioner also does not allege a reasonable probability that he would have received a lighter sentence if he had gone to trial and was found guilty. The state court judge made it quite clear that this was the second easiest situation she had ever faced in determining to adjudicate petitioner as a habitual criminal.

To summarize, the judge would not have continued the trial in this failure-to-stop case past the trial in the capital murder case, and petitioner would have been found guilty of failure to stop if he had gone to trial. Whether petitioner pleaded guilty or went to trial and was found guilty, the prosecution in the capital murder case would have been able to argue in that case's penalty hearing about the conviction in this case.

Another factor behind counsel's advice to plead guilty was petitioner's location of housing. At the sentencing hearing, counsel represented that petitioner told her that he wanted to get out of the county jail and go to prison. Exh. 13 at 19 (dkt. no. 36). There was some debate over whether petitioner needed to remain at the jail to help his attorney prepare in the capital murder case, but, if the only thing holding petitioner at the jail was the failure-to-stop case, then petitioner's best option was to plead guilty and ask to be transferred to the prison as soon as possible.

///
///

1  Ground 1 is without merit. Reasonable jurists would not find the Court's conclusion to be debatable or wrong, and the Court will not issue a certificate of appealability on ground 1.

Ground 2 appears to be mostly the same as ground 1, and to that extent it also is without merit. To the extent that petitioner is claiming additionally in ground 2 that the state district court failed to hold an evidentiary hearing on the claim, that is a claim of error in the state post-conviction proceeding, and such a claim is not addressable in federal habeas corpus. *Franzen v. Brinkman,* 877 F.2d 26, 26 (9th Cir. 1989).

Ground 2 is without merit. Reasonable jurists would not find the Court's conclusion to be debatable or wrong, and the Court will not issue a certificate of appealability on ground 2.

Ground 3 is a claim that counsel provided ineffective assistance because counsel did not properly oppose the prosecution's effort to have petitioner sentenced as a habitual criminal. The prosecution had argued in a pre-sentencing brief in favor of habitual-criminal treatment that petitioner was facing charges in the capital murder case. Exh. 10 at 4-11 (dkt. no. 36). On direct appeal, petitioner raised that underlying issue. The Nevada Supreme Court held:

> Second, Crawley argues that the State violated his due process rights during sentencing by presenting evidence that he was facing murder, burglary, and robbery charges in an unrelated matter. Defense counsel argued against consideration of this evidence in sentencing Crawley. Crawley contends that the district court's possible reliance on this unsubstantiated evidence warrants resentencing. However, the record shows that the district court expressly declined to consider evidence of the pending charges, specifically stating that Crawley's sentence was based "on his prior convictions, the felonies, and the gross misdemeanor, although that's not a basis for habitual, but I can consider it in total." Later, during the sentencing hearing, the district court again stressed that it did not consider the pending unrelated charges in sentencing Crawley, stating, "I did not rely on the other case and, quite frankly, that's why it's not life without."

Exh. 18 at 3 (dkt. no. 36) (footnote omitted). Then, on appeal from the denial of his state post-conviction habeas corpus petition, the Nevada Supreme Court considered the ineffective-assistance issue and held:

> Second, Crawley argues that counsel was ineffective for failing to provide legal authority at sentencing for his contention that the district court could not consider pending criminal charges in adjudicating him a habitual criminal. The underlying claim — that the district court considered pending charges during sentencing — was raised and rejected on direct appeal. . . . Because this court already concluded that the district court did not rely on the pending charges at sentencing, Crawley failed to demonstrate prejudice from any failure by his counsel to provide legal citations. Therefore, the district court did not err in denying this claim.

Exh. 47 at 2-3 (dkt. no. 37).

The notice of habitual criminality provided the required number of prior felony convictions for adjudication as a large habitual criminal. Exh. 6 (dkt. no. 36). The validity of those convictions was not an issue. Counsel did argue in a brief and at the sentencing hearing for sentencing petitioner for the crime without the habitual-criminal enhancement. *See* Exh. 11 (dkt. no. 36); Exh. 13 at 9-12 (dkt. no. 36). The trial court noted that it could have read only the first four pages of the prosecution's brief in support of habitual-criminal adjudication (Exh. 10 (dkt. no. 36)) in conjunction with the facts of this case, and that would have been enough for a determination that petitioner should be sentenced as a habitual criminal. Exh. 13 at 14-15 (dkt. no. 36). The trial court specifically stated that it would not consider the allegations in the capital case. *Id.* at 15-16 (dkt. no. 36). Citation of legal authority would have made no difference in those circumstances.  The trial court simply determined that petitioner should be sentenced as a habitual criminal even without taking the facts of the capital case into account, and nothing counsel could have done would have changed that determination. The Nevada Supreme Court reasonably applied *Strickland*.

Ground 3 is without merit. Reasonable jurists would not find this Court's determination to be debatable or wrong, and the Court will not issue a certificate of appealability for ground 3.

It is therefore ordered that the amended petition for a writ of habeas corpus (dkt. no. 21) is denied. The Clerk of the Court shall enter judgment accordingly and close this action.

///

1 | It is further ordered that a certificate of appealability is denied.

2 | DATED THIS 28th day of September 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE